[Cite as *State v. Worrell*, 2023-Ohio-3110.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                      CASE NO. 2-23-03

    v.

MARK D. WORRELL,                        O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Auglaize County Common Pleas Court
Trial Court No. 2022-CR-0164

Judgment Affirmed

Date of Decision: September 5, 2023

APPEARANCES:

    *Nick A. Catania* for Appellant

    *Benjamin R. Elder* for Appellee

**WALDICK, J.**

{¶1} Defendant-appellant, Mark Worrell ("Worrell"), appeals the judgment of conviction and sentence entered in the Auglaize County Court of Common Pleas on January 13, 2023. For the reasons that follow, we affirm.

*Procedural History and Relevant Facts*

{¶2} This case originated on December 15, 2022, when the Auglaize County Grand Jury returned a three-count indictment against Worrell, charging him as follows: Count 1 – Illegal Conveyance of Drugs of Abuse onto the Grounds of a Specified Governmental Facility, a third-degree felony in violation of R.C. 2921.36(A)(2), alleged to have occurred on or about November 16, 2022; Count 2 – Possession of a Fentanyl-Related Compound, a fifth-degree felony in violation of R.C. 2925.11(A) and (C)(11)(a), alleged to have occurred on or about November 17, 2022; and Count 3 – Possession of a Fentanyl-Related Compound, a fifth-degree felony in violation of R.C. 2925.11(A) and (C)(11)(a), alleged to have occurred on or about November 16, 2022.

{¶3} On December 20, 2022, an arraignment was held and Worrell entered a plea of not guilty to all counts in the indictment.

{¶4} On January 11, 2023, a change of plea hearing took place. At that time, Worrell entered a negotiated plea of guilty to Counts 2 and 3 of the indictment, in exchange for a dismissal of Count 1.

{¶5} At the start of the change of plea hearing, as counsel for the State of Ohio was setting forth the counts to which the defendant would be pleading guilty, the trial court asked, "Do they merge?", to which the prosecutor answered, "No, Sir", and then proceeded to detail the rest of the negotiated plea arrangement. (1/11/23 Tr., 3-4). Following that, the trial court asked defense counsel, "Mr. Catania, do you concur?", to which defense counsel answered, "I do, Your Honor." (1/11/23 Tr., 4).

{¶6} After a detailed Crim.R. 11 plea colloquy, Worrell pled guilty to Count 2 of the indictment, acknowledging that the crime in Count 2 occurred on November 17, 2022, and pled guilty to Count 3 of the indictment, acknowledging that the crime at issue in Count 3 occurred on November 16, 2022. (1/11/23 Tr., 4-12).

{¶7} At the trial court's request, the prosecutor then set forth the following statement of facts:

> On November 16, 2022, the Defendant was brought to the Auglaize County Jail in Wapakoneta, Auglaize County, State of Ohio. He was brought over from the Mercer County Jail, had been dressed out in the Mercer County Jail uniform. He was changed out into an Auglaize uniform. On November 17, 2022, the Defendant overdosed while an inmate at the Auglaize County Jail and [*sic*] taken to the hospital. Once he was released from the hospital, he returned to Mercer County without returning to the Auglaize County Jail. Sergeant Keckler went through the Mercer County uniforms the Defendant had worn and found two (2) balled up items in the socks, which tested positive for fentanyl and was sent to BCI. The Defendant gave a statement advising that he found heroin, in a plastic cigarette wrapper, on the floor in intake while in the Auglaize County Jail, and that's what he overdosed on. Reviews of the cameras showed the Defendant did not

> pick anything up off the floor. So his story didn't pan out or was not corroborated by the video of the area. Essentially, the possession of fentanyl on November 17th is related in [*sic*] Count II involves, - or is for the use of fentanyl on the 17th. The Count III is possession on November 16th, which was the day he was brought into the Auglaize County Jail with the items in his socks, which were found in his uniform that he changed out of from Mercer county.

(1/11/23 Tr., 12-13).

{¶8} At that point, the trial court asked if that meant the fentanyl used by Worrell on the 17th was the same fentanyl possessed by Worrell on the 16th, to which the prosecutor replied, "Not technically, because he didn't have access to his uniform after he was changed out, so there was [sic] items left in the socks on the 16th. He must have continued to have some, because he used some on the 17th, which he overdosed on." (1/11/23 Tr., 13-14). The trial court noted that Worrell could have also obtained the fentanyl on which he overdosed from somebody else in the jail, and the prosecutor acknowledged that was true. (1/11/23 Tr., 14).

{¶9} The trial court then addressed Worrell directly on the issue of where he obtained the drugs at issue. Worrell stated that, as to the drugs he overdosed on in the Auglaize County Jail, he had taken those drugs into the jail dorm in his mouth, after retrieving the substance from the Mercer County socks he had been wearing when he first arrived at the jail in Auglaize County. (1/11/23 Tr., 14-15). Worrell stated that he had found all of the drugs at issue when he was in the Mercer County

Jail intake cell on November 13th, and that he then brought those drugs with him to the Auglaize County Jail from the Mercer County Jail. (1/11/23 Tr., 15-16).

{¶10} Following the trial court's acceptance of Worrell's guilty plea to Counts 2 and 3, the matter proceeded to a sentencing hearing on that same date. The sentencing hearing transcript reflects that Worrell's counsel made no express motion or argument with regard to the issue of allied offenses and potential merger. However, when presenting argument in mitigation of sentence, defense counsel stated that, "When we're talking about the two (2) Felony 5's, we are talking about use and possession of the same thing essentially, on two (2) separate days. So I understand that the Court could find that those don't merge, but we're asking the Court to at least run those concurrent * * *." (1/11/23 Tr., 27). No additional reference to merger was made during the sentencing hearing by counsel for either party, or by the trial judge. The trial court then sentenced Worrell to a twelve-month prison term on Count 2 and to a twelve-month prison term on Count 3. The trial court ordered the two twelve-month sentences be served consecutively to each other and consecutively to a prison term stemming from a prior felony case.

{¶11} On February 7, 2023, Worrell filed the instant appeal.

### Assignment of Error

**The trial court erred in not merging the two possession charges which was one action in which both charges had the same elements and the action was one continuous possession and use of drugs which did not have separate animus.**

{¶12} In the sole assignment of error, Worrell contends that the trial court erred by not merging for sentencing the two convictions for Possession of a Fentanyl-Related Compound as allied offenses of similar import. Worrell argues that merger should have occurred because the two separate quantities of fentanyl at issue were possessed by him while an inmate at the Auglaize County Jail, and because the two possession offenses involved the same exact elements and were committed with the same animus.

{¶13} Pursuant to R.C. 2941.25, Ohio's multiple-count statute, the imposition of multiple punishments for the same criminal conduct is prohibited. Specifically, R.C. 2941.25 provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶14} In determining whether offenses are allied offenses of similar import and should be merged for sentencing, courts are instructed to consider three separate factors – the conduct, the animus, and the import. *State v. Ruff*, 143 Ohio St.3d 114, 2015–Ohio–995, paragraph one of the syllabus. Offenses do not merge and a

defendant may be convicted and sentenced for multiple offenses if any one of the following is true: "(1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Ruff*, paragraph three of the syllabus. Two or more offenses of dissimilar import exist "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff*, paragraph two of the syllabus. The determination as to whether a defendant has been found guilty of allied offenses of similar import "is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct," *Ruff,* at ¶ 26, and "an offense may be committed in a variety of ways * * *." *Ruff*, at ¶ 30. "No bright-line rule can govern every situation." *Id.*

{¶15} An appellate court applies a de novo standard of review in reviewing a trial court's merger determination. *State v. Williams*, 134 Ohio St.3d 482, 2012–Ohio–5699, ¶ 28. However, "[a]n accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 3. In *Rogers*, the Supreme Court of Ohio further held that absent the defendant showing that there was a reasonable

probability that the convictions are in fact for allied offenses of similar import committed with the same conduct and without a separate animus, "the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error." *Id.*

{¶16} In the instant case, Worrell failed to raise an allied offense argument or objection in the trial court and, in fact, the defense appeared to concede at the time of the change of plea that the two possession offenses did not merge. (1/11/23 Tr., 4). As a result, Worrell has forfeited his right to raise an allied offense argument on appeal and his assignment of error must be reviewed solely for plain error. *Rogers, supra*, at ¶ 21-22.

{¶17} As previously noted, to establish plain error here, it is Worrell who has the burden to demonstrate a reasonable probability that the convictions at issue are for allied offenses of similar import committed with the same conduct and without a separate animus. Worrell has failed to make such a showing in this case.

{¶18} Because Worrell did not raise the issue of merger in the trial court, no hearing was had on that issue at sentencing. However, to the extent that the record demonstrates information relevant to the issue, the record tends to reflect that the two counts of Possession of a Fentanyl-Related Compound of which Worrell was convicted were committed separately and with a different animus.

{¶19} To be guilty of possession pursuant to R.C. 2925.11(A), the offender must "knowingly obtain, possess, or use a controlled substance."

{¶20} In this case, as detailed above, there were representations made by both the prosecution and the defense at the time of the change of plea as to the facts upon which the two possession offenses were based. While the state's statement of facts differed from the representations made by the defendant, what was consistent was that the fentanyl products were possessed by Worrell in two distinctly separate locations within the jail, and on two different dates. Thus, the two offenses of possession here are separate and identifiable. The offense of possessing fentanyl on the 16th and the offense of possessing fentanyl on the 17th were not committed by Worrell with the same conduct, and the offenses were committed at two separate times. As reflected by the record, the offense in Count 2 was based on Worrell's use of fentanyl in the jail on November 17th, while the offense in Count 3 was based on the fentanyl Worrell had in his constructive possession while stored in his Mercer County uniform following his arrival at the Auglaize County Jail on November 16th. The record also reflects that Worrell gave at least two conflicting explanations as to where and how he obtained the fentanyl and, as the trial court accurately noted, Worrell could have obtained the fentanyl on which he overdosed from somebody else in the jail. (1/11/23 Tr., 14).

{¶21} Worrell's actual possession and use of fentanyl in the jail dorm on November 17th can also reasonably be inferred to have been committed with a separate animus or motivation from his November 16th constructive possession and storage of the same type of drug in the Mercer County Jail clothing stored in the Auglaize County Jail property system. The gap in time between the two possession offenses, the different locations, and the fact that one quantity of fentanyl was actually used while the separate quantity was constructively possessed and being saved for later, all serve to establish that the two quantities of fentanyl were possessed with a separate motivation as to each.

{¶22} Finally, we have reviewed *State v. Brown*, 186 Ohio App.3d 437, 2010-Ohio-324 (12th Dist.), upon which Worrell relies, and *Brown* is factually distinguishable from the instant case. *Brown* involved two crack cocaine possession offenses that occurred on the same date, at a single location, and there was no evidence in that case – unlike here – to indicate that the defendant intended to do anything with all of the crack cocaine at issue other than use it on the night in question. *Id*.

{¶23} For all of those reasons, Worrell has not shown a reasonable probability that the convictions at issue are allied offenses of similar import committed with the same conduct and without a separate animus. As Worrell has

not demonstrated that the trial court's failure to merge the two offenses constituted plain error, the assignment of error is overruled.

{¶24} Having found no error prejudicial to the defendant-appellant in the particulars assigned and argued, the judgment of the Auglaize County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**ZIMMERMAN, J., concurs.**

**/jlr**

**MILLER, P.J., concurring separately.**

{¶25} I concur with the judgment of the majority and agree that plain error was not established in this case. However, I write separately as I would find that any error with regard to the merger of offenses in this case was invited by the defense.

{¶26} Pursuant to the "invited error" doctrine, a party may not "'take advantage of an error which he himself invited or induced.'" *State v. Campbell*, 90 Ohio St.3d 320, 324, 738 N.E.2d 1178 (2000), quoting *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.,* 28 Ohio St.3d 20, 502 N.E.2d 590 (1986), paragraph one of the syllabus. However, simple acquiescence in the trial judge's erroneous conclusion will not support a finding of invited error. *Campbell* at 324. In order

for the doctrine to apply, a party must have been "'actively responsible' for the trial court's error." *State v. McAlpin,* 169 Ohio St.3d 279, 2022-Ohio-1567, ¶ 220. In my judgment, Worrell and his counsel were "actively responsible" and contributed to the trial court's decision not to merge the possession offenses.

**{¶27}** As aptly recounted in the majority opinion, the record reflects the prosecutor was setting forth the plea negotiations when the trial court inquired whether the offenses to which Worrell was pleading merged. The prosecutor advised the court the offenses did not merge then continued outlining the negotiations. Immediately thereafter, the court asked defense counsel if he concurred with the prosecutor's statements, to which counsel answered affirmatively. When reviewing the facts of the two offenses as part of the plea colloquy, the court was led to consider that the offenses occurred on different dates and may even have involved different sources for the fentanyl Worrell possessed. This information came both from the prosecutor and Worrell's responses to the court's inquiring about certain facts. When the matter came on for sentencing, Worrell's counsel advised the court the offenses did not merge. Counsel explained his sentencing strategy and stated:

> In this situation, we understand, and Mr. Worrell understands, that at a certain point he has to pay the piper. We're not asking for you not to send him to prison. We understand the Court very likely and probably should send Mr. Worrell to prison in this case. But we are asking the Court to keep it under sixty (60) months to give him the opportunity to put forward a good effort in prison to hopefully get his

GED in there and do programs, and show this Court he is amenable to Judicial Release at a further date. When we're talking about the two (2) Felony 5's, we are talking about use and possession of the same thing essentially, on two (2) separate days. *So I understand that the Court could find that those don't merge*, but we're asking the Court to at least run those concurrent or give eleven (11) months on one (1), to keep the total sentence under [sixty (60)] months to provide Mr. Worrell that opportunity to show the Court hopefully, at a future date, he is amenable to Judicial Release. . . .

(Emphasis added.) (Jan. 11, 2023 Tr. at 26-27).

**{¶28}** In reviewing the record, it is evident defense counsel employed a sound strategy to minimize Worrell's exposure to a potential lengthy prison term. Counsel was successful in negotiating the dismissal of Count One – Illegal Conveyance of Drugs of Abuse onto the Grounds of a Specified Governmental Facility, a felony of the third degree and the most serious offense charged against Worrell (and arguably the easiest for the State to prove). If successful, this strategy would shorten the time Worrell had to serve before filing a motion for judicial release.[1] Only after Worrell received consecutive sentences of 12 months for each drug possession offense served consecutively to a 36-month sentence imposed for a community control violation imposed for a prior offense, which totaled 60 months, did counsel's strategy switch to appealing the merger issue.

---

[1] A sentence totaling 60 months precluded Worrell from filing for judicial release until after he served four years of the stated prison term. R.C. 2929.20(C)(1)(c). If counsel's strategy of obtaining a sentence of less than 60 months had been successful, Worrell could have applied for judicial release after serving 180 days in prison. R.C. 2929.20(C)(1)(b).

{¶29} While the invited error doctrine requires "more than mere 'acquiescence in the trial judge's [alleged] erroneous conclusion,'" I am of the opinion defense counsel's agreeing with the prosecutor's statement at the change-of-plea hearing and then advising the trial court at sentencing that the offenses did not merge constitutes more than mere acquiescence. *Campbell*, 90 Ohio St.3d at 324, quoting *Carrothers v. Hunter*, 23 Ohio St.2d 99, 103, 262 N.E.2d 99 (1970). *See State v. Oehler*, 6th Dist. Williams No. WM-11-001, 2011-Ohio-6501 (counsel's express agreement with the trial court's assessment that two charges were not allied offenses and that defendant was subject to two separate penalties constituted invited error).

{¶30} On the record of this case, I find defense counsel affirmatively conceded the issue of merger at the time of the guilty plea and then confirmed that position at the time of sentencing. In my judgment, these actions by counsel at least induced, if not openly invited, the court to sentence Worrell on each offense. Consequently, he cannot now take advantage of that claimed error.